UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JORGE and JULIA CERVERA,                      CIV. NO. 13-954(PJS/JSM)

      Plaintiffs,                      REPORT AND RECOMMENDATION

v.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEM, INC., MERSCORP, INC., BANK of
AMERICA, N.A., BAC HOME LOAN SERVICING, L.P.,
BAC GP, LLP, et.al.

      Defendants.

The above matter came before the undersigned on Defendants' Motion to Dismiss [Docket No. 7]. This matter was decided on the parties' written submissions. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A),(B) and Local Rule 72.1(c) and the Amended Administrative Order issued by Chief Judge Michael J. Davis on October 16, 2013 [Docket No. 17].

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendants: (1) quiet title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title. For the reasons below, the Court recommends that defendants'[1] Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

---

[1]     In the caption of their Complaint, plaintiffs also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein." As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court therefore recommends that all claims against them be dismissed. See Sonsalla v. Mortgage Elec. Registration Sys., Inc., Civ. No. 13-659 (JRT/JSM), 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995)

## I.     BACKGROUND

Plaintiffs sued defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP, Inc., Bank of America, NA ("BANA"), BAC Home Loans Servicing, LP ("BACHLS"), and BAC GP, LLP ("BACGP") (collectively, "defendants")[2] in Minnesota state court in April, 2013.   Notice of Removal, p. 2 [Docket No. 1]. Defendants removed the matter to Federal District Court on April 24, 2013.   Id., p. 1. Defendants moved to dismiss plaintiffs' Complaint in lieu of answering.

The facts bearing on defendants' motion to dismiss are as follows:   Plaintiffs acquired their interest in property in Shakopee, Minnesota ("Property") on November 20, 2008, by Warranty Deed.   Complaint, ¶¶1, 2 [Docket No. 1-1].   Also on November 20, 2008, plaintiffs executed a note to Taylor, Bean & Whitaker Mortgage Corp. ("Taylor Bean") and a mortgage in favor of MERS as nominee for Taylor, Bean.   Id., ¶7, Ex. 1 (Mortgage).   On or about September 14, 2009, the Federal Bureau of Investigation raided Taylor Bean's office and immediately ceased Taylor Bean's business operations. Id., ¶10.   According to plaintiffs, as of that date, MERS no longer had legal authority to act on Taylor Bean's behalf.   Id., ¶ 11.

The Peterson, Fram and Bergman law firm ("PFB") drafted an Assignment of Mortgage from MERS, as nominee for Taylor Bean, to BACHLS.   Id., ¶12, Ex. 3 (Assignment of Mortgage).   Steve Bruns signed the Assignment of Mortgage as Vice

---

(affirming dismissal of unidentified defendants about whom no factual allegations were made)).

[2]     Defendants stated that at the time of the events in the Complaint, BACGP was a general partner of BACHLS.   Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), p. 3, fn. 3 (citing Complaint, Ex. 4) [Docket No. 9].   BAC GP was a subsidiary of BANA.   Id.   BACGP and BACHLS have since merged into BANA.   Id.

President for MERS on November 23, 2009, and the Assignment of Mortgage was recorded in the Scott County Recorder's Office on January 26, 2010. <u>Id.</u> Plaintiffs pled "on information and belief" that Bruns lacked authority to sign the Assignment because he was actually employed by PFB and there was no evidence that Bruns was authorized to act as MERS's attorney-in-fact. <u>Id.</u>, ¶13.

On January 7, 2010, Rhoena Rice, Vice President of BACGP (BACHLS's general partner), signed a Notice of Pendency and Power of Attorney empowering PFB to foreclose on the Property and to bid in for the property at a foreclosure sale. <u>Id.</u>, ¶14, Ex. 4 (Notice of Pendency and Power of Attorney). This Notice was recorded in the Scott County Recorder's office on January 26, 2010. <u>Id.</u> Plaintiffs pled "on information and belief" that Rice lacked authority to sign the Notice of Pendency and Power of Attorney as there was no "of record" evidence of BACHLS empowering BACGP to act as BACHLS's attorney-in-fact. <u>Id.</u>, ¶15. Plaintiffs further alleged that there was no "of record" evidence authorizing BANA or BACGP employees to execute foreclosure documents on behalf of BACGP as a partnership or BACHLS. <u>Id.</u>, ¶17.

On January 22, 2010, PFB noticed a sheriff's sale of the Property on behalf of BACHLS, which was conducted on March 30, 2010. <u>Id.</u>, ¶19. The Notice of Foreclosure was first published on February 4, 2010. Complaint, Ex. 5 (Sheriff's Certificate of Sale and Foreclosure Record). PFB bid in the debt allegedly owed to BACHLS. <u>Id.</u> The Sheriff's Certificate of Sale and Foreclosure Record was recorded in the Scott County Recorder's office on March 30, 2010. <u>Id.</u>, Ex. 5 (Sheriff's Certificate of Sale and Foreclosure Record).

Plaintiffs claimed that on or about April 13, 2011, PFB received constructive notice that BANA had engaged in "unsafe and unsound" banking practices in conducting foreclosures, based on an Order and Consent Decree between the Office of the Comptroller and BANA, which resulted in MERS amending its membership rules. Id., ¶¶20, 22, Ex. 6 (Consent Order).  Plaintiffs pled "on information and belief" that as a result of this rule change, MERS revoked Bruns' signing authority after July 22, 2011. Id., ¶23.

On September 4, 2012, BACHLS, through PFB, filed a complaint to evict plaintiffs from the Property, despite knowing that the foreclosure was void because Bruns and Rice lacked authority to sign documents, there existed an unrecorded assignment from BACHLS to Fannie Mae[3] in violation of Minn. Stat. §580.02, and on April 11, 2011, PFB was notified of BANA's "unsafe and unsound" banking practices. Id., ¶28.

According to plaintiffs, PFB knew or had reason to know that the Assignment of Mortgage and the Notice of Pendency and Power of Attorney were void, and as a result, the foreclosure was void and plaintiffs remained the owners in fee title of the Property. Id., ¶¶25-30.

Plaintiffs pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq.  This Count alleged that in a quiet title action, defendants have the burden of proof,

---

[3]     This Court has no idea why plaintiffs are referencing Fannie Mae in this paragraph of the Complaint as they alleged no facts suggesting that Fannie Mae played any role in their mortgage.

and consequently, defendants must prove their interest in the Property by a preponderance of evidence. Id., ¶¶34-38,

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.02 that the Assignment of Mortgage from MERS to BACHLS and the Notice of Pendency and Power of Attorney were void, and that plaintiffs remained the fee owners of the Property. Id., ¶¶40, 41.

Count III alleged slander of title based on the recording of the Assignment of Mortgage and Notice of Pendency and Power of Attorney, which plaintiffs claimed were false and not executed by legally authorized persons, and that PFB knew or should have known that the documents were false. Id., ¶¶43-47.

As relief, plaintiffs sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Sheriff's Certificate of Sale, Assignment of Mortgage, and Notice of Pendency and Power of Attorney were void; an order that plaintiffs are the fee owners of the Property; and monetary damages. Complaint, Prayer for Relief, ¶¶I, II, III.

Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that plaintiffs had already litigated all of the present claims in Robinson v. Bank of America, NA, 11cv2284 (MJD/LIB), which the district court had dismissed with prejudice, and therefore, the suit was barred by the doctrine of res judicata. Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), pp. 6-9 [Docket No. 9].[4]  Additionally, defendants submitted that

---

[4]     Defendants noted that this is the fourth lawsuit in this district in which the Cerveras have challenged the foreclosure of their mortgage.  Def. Mem., p. 3.  The Cerveras were plaintiffs in Tully v. Bank of America, N.A., Civ. No. 10-0473 (DWF/TNL)

plaintiffs lacked standing to object to the foreclosure sale because the six-month redemption period had long since passed; the Complaint, which pled "facts" on "information and belief," failed to meet the pleading standards of Rule 8; the theories on which the Complaint is based – i.e. Bruns and Rice did not have legal authority to execute documents because there is no "of record" evidence of their authority – were meritless as it is settled law that even if the individuals signing documents worked for other organizations, it does not mean that these persons cannot also work for or be hired as agents on behalf of other clients; and as third parties, plaintiffs lack standing to challenge the authority of the signatories to the Assignment of Mortgage and Notice of Pendency and Power of Attorney to execute the documents. Id., pp. 9-16.

As for the claim for declaratory relief, defendants argued that it failed because plaintiffs did not sufficiently plead any substantive controversies entitling them to any relief. Id., pp. 18-19.

Finally, with regard to the slander of title claim, defendants submitted that it must be dismissed because none of its allegations stated any wrongdoing by any named defendant and it did not seek any relief.[5] Id., pp. 19-20.

For the reasons set forth below, the Court concludes that plaintiffs fail to state a claim for relief and therefore, defendants' motion to dismiss should be granted.[6]

---

(dismissed without prejudice); Larsen v. Bank of America, N.A., Civ. No. 11-1775 (MJD/JSM) (voluntarily dismissed); Robinson v. Bank of America, NA, Civ. No. 11-2284 (MJD/LIB) (dismissed with prejudice).

[5]   Defendants also challenged plaintiffs' "other less-developed theories," (Def. Mem., pp. 20-22), however as the Court is not basing its decision on these other arguments, it will not summarize them here.

## II.    LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by

---

[6]    Because this Court has determined that plaintiffs' underlying claims fail on the merits, it need not decide whether their claims are barred by the doctrine of res judicata. See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (declining to reach a determination on res judicata or estoppel because the underlying claims fail on the merits); Schumacher v. Federal Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim.  The court need not reach the res judicata determination, however, as the underlying claims, . . . fail on the merits.).  However, as other courts have determined on facts and arguments virtually identical to those presented in the instant case, there is no question that plaintiffs' suit is barred based on the preclusion doctrine of res judicata.  See Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094 (SRN/JJG), 2013 WL 2251001, at *5-6 (D. Minn. May 22, 2013); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4-5 (D. Minn. May 17, 2013); Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *6 (D. Minn. May 15, 2013).

Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 677 (quoting <u>Twombly</u>, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ritchie v. St. Louis Jewish Light</u>, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment. <u>See Little Gem Life Sciences, LLC v. Orphan Medical, Inc.</u>, 537 F.3d 913, 916 (8th Cir. 2008) (quoting <u>Porous Media Corp. v. Pall</u>

Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted));

see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323

F.3d 695, 697, n. 4 (8th Cir. 2003).

III.    **DISCUSSION**[7]

   A.    **Quiet Title**

       In Minnesota, "[a]ny person in possession of real property personally . . . may

bring an action against another who claims an estate or interest therein, or a lien

thereon, adverse to the person bringing the action, for the purpose of determining such

adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

       In response to defendants' motion to dismiss the quiet title claim, plaintiffs

contended that all they had to plead was that they were in possession of the Property

and defendants had a claim adverse to theirs.  Plaintiffs' Memorandum in Opposition to

Motion to Dismiss ("Pl. Opp. Mem."), pp. 11-12 [Docket No. 12].  Based on those

---

[7]     This Court notes that plaintiffs did not object to the foreclosure within the redemption period under Minn. Stat. § 580.23(a), and therefore, arguably no longer have standing to challenge the foreclosure – an issue defendants raised in their motion to dismiss.  Def. Mem., pp. 9-11; Defendants' Reply Memorandum, pp. 5-7 [Docket No. 14].  See Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, *3 (D. Minn. Aug. 29, 2013); Cheng Lee v. Federal Nat. Mortg. Ass'n, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, *3 (D. Minn., June 12, 2013); Stein v. Chase Home Fin., Civ. No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *6 (D. Minn. Aug. 13, 2010) (holding that a plaintiff could not challenge the validity of a foreclosure because the challenge was raised after the expiration of the redemption period), aff'd, 662 F.3d 976 (8th Cir. 2011)).  However, given that the Minnesota Supreme Court recently held that a foreclosure was void for failure to strictly comply with Minn. Stat. § 580.02(3), despite the fact the suit was filed after the redemption period (albeit standing was not addressed in this decision), Ruiz v. 1st Fidelity, 929 N.W.2d 53, 58 (Minn. 2013), the Court proceeds to analyze the merits of plaintiffs' claims.

allegations, plaintiffs alleged that they had "clearly stated a claim under Minn. Stat. §599.01."[8] Id., p. 12.

Plaintiffs' counsel has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law."  Karnatcheva v. JP Morgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva; Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685

---

[8]     The Minnesota Court of Appeals disagrees with plaintiffs' argument that a quiet title claim premised solely on allegations that they were in possession of the Property and defendants had a claim adverse to them states a cause of action under Minnesota law.  In a case similar to the instant suit and relying on the standards for pleading articulated in Twombly, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid. Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss. We disagree.
>
> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013).

(PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Mere allegations of a defendant's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief.   See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

Consequently, plaintiffs' wholly unsupported statements on "information and belief" about the alleged lack of legal authority by Bruns and Rice to sign documents, and that BACHLS had transferred the mortgagee's power of sale to Fannie Mae before the sheriff's sale through an unrecorded assignment, utterly fail the pleading requirements governing actions in this Court.   Complaint, ¶¶13, 15, 28.   While it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and

belief' is sufficient to state a claim," LaCroix v. U.S. Bank, NA, Civ. No. 11–3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012), on the other hand, the Eighth Circuit and courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards articulated in Iqbal and Twombly. See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2013 WL 1688903 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Servs., LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, *2 (D. Minn. June 17, 2013). That is the case here.

Specifically, plaintiffs' speculative claims regarding Bruns' lack of authority to sign the Assignment and Rice's lack of authority to sign the Notice of Pendency and Power of Attorney, "do not hold up to even the slightest scrutiny." Simmer, 2013 WL 6244710, at *3 (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); Segura v.

Federal Nat'l Mortg. Ass'n, Civ. No. 13-531(SRN/JJK), 2013 WL 3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.); Welk, 2013 WL 2155463, at *4 ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway.  But there are no facts of any kind—no evidence pled supporting these allegations."); Stilp v. HSBC Bank USA, N.A., Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), aff'd, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted); Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 491 (Minn.

2009) (recognizing that mortgage assignments are executed for MERS by bank representatives).

Additionally, even if there was any truth to plaintiffs' unsupported statements about Bruns's and Rice's lack of authority to execute the Assignment of Mortgage or the foreclosure-related documents, plaintiffs suffered no injury in fact as a result and therefore, lack standing to pursue a quiet title claim on this basis. See Pope, 2013 WL 2251001, at *3 ("Mr. Butler has insisted for more than two years that the individual named in this and many other complaints, a Ms. China Brown, lacked legal authority to sign on behalf of Wells Fargo.  He has yet to produce any evidence in support of this speculative assertion.  But even if Ms. Brown did not have the authority to bind Wells Fargo, then whatever harm caused by that lack of authority is harm to Wells Fargo, not to the Popes or any other borrower. . .[t]hus, even assuming that Ms. Brown was not authorized to sign the documents she signed, the Popes have suffered no harm as a result and do not have standing to challenge her alleged lack of authority.") (internal citation omitted); Kaylor v. Bank of Am., N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Forseth v. Bank of Am., N.A., Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of

Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event.   The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.") (citations omitted); Sovis v. Bank of New York Mellon, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); Gerlich v. Countrywide Home Loans, Inc., Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2 (D. Minn. Sept. 7, 2011) (borrower lacks standing to challenge assignment of mortgage); Kebasso v. BAC Home Loans Servicing, LP, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object."") (quoting Jackson, 770 N.W.2d at 500).

As for plaintiffs' allegations that BACHLS had transferred the mortgagee's power of sale to Fannie Mae before the sheriff's sale through an unrecorded assignment, (Complaint, ¶ 28), this claim is without one iota of factual support and implausible.  See Pope, 2013 WL 2251001, at *3 (The Popes allege that "[u]pon information and belief, Freddie Mac acquired its interest in the [ ] mortgage prior to the commencement" of foreclosure proceedings but "[n]o assignment of mortgage from Wells to Freddie Mac appears in the records of the Ramsey County Recorder." [ ] This is precisely the kind of implausible allegation that Twombly and Iqbal prohibit.  The Popes ask the Court to assume that an assignment occurred because they allege it occurred.  But there is a more plausible explanation for the absence of any assignment in the Ramsey County records: there was no such assignment. The Court need not accept as true implausible allegations, as offered by the Popes here. To the extent their claims depend on this alleged unrecorded assignment, those claims fail to state claims on which relief can be granted.").  Instead, the documents referenced in and attached to the Complaint show an unbroken chain of title from MERS, as mortgagee to BACHLS, the foreclosing entity. See Complaint, Ex. 1 (Mortgage), Ex. 3 (Assignment of Mortgage to BACHLS), Ex. 5 (Sheriff's Certificate of Sale and Foreclosure Record).  The Sheriff's Certificate of Sale is prima facie evidence that BAC complied with all legal requirements and that the foreclosure and sale were proper.  Minn. Stat. §580.19.  Plaintiffs stated no facts in their Complaint to rebut this evidence and none of the documents attached to their Complaint support a claim that there was an unrecorded assignment between BACHLS and Fannie Mae before the foreclosure sale.

Further, plaintiffs' contention that both the Assignment of Mortgage on behalf of MERS to BACHLS and Notice of Pendency and Power of Attorney were invalid because there is no "of record" evidence of Bruns's or Rice's authority to sign to sign these documents, (Complaint, ¶¶13, 14, Pl. Opp. Mem., pp. 14[9], 16), is meritless on the facts and law.  As to the Notice of Pendency and Power of Attorney, the claim not only has no factual support, it is contradicted by the record.  The <u>recorded</u> Notice of Pendency and Power of Attorney signed by Rice <u>stated her authority</u>: she was the Vice President of BACGP, "a limited liability company under the State of New York, the General Partner of [BACHLS], a Texas limited partnership on behalf of the partnership."  Complaint, Ex. 4 (Notice of Pendency and Power of Attorney).

Moreover, even if there was no "of record" evidence of Rice's authority to sign the Notice of Pendency and Power of Attorney on behalf of BACHLS or Bruns's authority to act on behalf of MERS to sign the Assignment of Mortgage, there is no legal requirement that the source or origin of this "authority" must be recorded in order to render the foreclosure of the Mortgage valid.

In order to foreclose a mortgage by advertisement, the foreclosing party must meet the mandatory requirements prescribed by the foreclosure by advertisement statutes.  <u>Jackson</u>, 770 N.W.2d at 495.  In this regard,

> [s]ection 580.02 contains three requirements that must be met before a mortgagee can foreclose by advertisement:
>
> (1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

---

[9]    Plaintiffs referred to "Ms. Sonsalla" and "BNYM" in this portion of their opposition brief.  Pl. Opp. Mem., p. 13.  The Court assumes that this was an error created by counsel's "cutting and pasting" from another document.

>(2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage ...
>
>(3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded[10]....

Id. at 496.  "Section 580.02 is strictly construed, and a foreclosing party must demonstrate "exact compliance" with the statute's requirements." Beecroft v. Deutsche Bank Nat. Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App. 2011), review denied (July 19, 2011) (quoting Jackson, 770 N.W.2d at 494). "Absent strict compliance with section 580.02, the foreclosure proceeding is void." Id. (citing Jackson, 770 N.W.2d at 494).

"The purpose of the statutory recording requirements is to ensure that a mortgagor has notice and an opportunity to redeem." Beecroft, 798 N.W.2d at 83 (citing Jackson, 770 N.W.2d at 495).  Therefore, "the plain language of section 580.02 requires only that the mortgage and any assignment of the mortgage be recorded to entitle a mortgage assignee to foreclose by advertisement," and nothing more.  Id.

There is nothing in Minn. Stat. § 580.02 or in any other statute that requires that the origin of the power to execute an assignment of mortgage or the power to execute

---

[10]    Minn. Stat. § 580.05 governs the recording of mortgage assignments by an attorney at law.  It provides:

>When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. § 580.05.

foreclosure-related documents by an attorney-in-fact to be recorded.  See Beecroft, 798

N.W.2d at 83 ("Indeed, Minnesota courts have recognized that the power to execute an

assignment by an attorney in fact need not be recorded to satisfy the foreclosure-by-

advertisement statute."); at 84 ("Applying the plain language of section 580.02, we

conclude that there is no requirement to record the instruments authorizing Citi

Residential to act as Ameriquest's attorney in fact for mortgage assignments and

memorializing the election of the special officers to execute the mortgage assignment

for Citi Residential on behalf of Ameriquest.   Only the Beecroft mortgage and

Ameriquest's assignment of the Beecroft mortgage to Deutsche Bank by Ameriquest's

attorney in fact are required to be recorded."); Molde v. CitiMortgage, Inc., 781 N.W.2d

36, 43 (Minn. Ct. App. 2010) (holding that "a document evidencing the authority of an

attorney-in-fact to initiate a foreclosure by advertisement" need not be recorded in the

tract index against the property);[11] see also, Yang Mee Thao-Xiong, 2013 WL 3788799,

---

[11]     In Molde, the Minnesota Court of Appeals described the facts as follows:

> Molde later fell behind in his mortgage payments. In
> November 2007, MERS assigned the mortgage to
> CitiMortgage. The assignment was recorded in Dakota
> County on November 13, 2007. That same day, a document
> entitled Notice of Pendency of Proceeding and Power of
> Attorney to Foreclose Mortgage also was recorded in Dakota
> County. The Notice of Pendency of Proceeding and Power
> of Attorney to Foreclose Mortgage described CitiMortgage's
> intent to foreclose Molde's mortgage by advertisement. The
> Notice of Pendency of Proceeding and Power of Attorney to
> Foreclose Mortgage was executed by James A. Geske,
> Esq., on November 9, 2007. Above the signature line is the
> notation, "Wilford & Geske, P.A. as Attorney in Fact for
> CitiMortgage, Inc."
>
> Wilford & Geske's authority to foreclose Molde's mortgage
> on behalf of CitiMortgage derives not from the document that

at *3 ("Moreover, there is no evidence that the assignment of the mortgage lacked proper authority under Minn. Stat. § 507.413.   Plaintiff argues that § 507.413 requires that a power of attorney be recorded prior to commencing a non judicial foreclosure.  By its plain language, however, § 507.413 contains no such requirement. Furthermore, § 507.413 has never been interpreted to require such."). [12]

Nor would any purpose be served by requiring the source of a signing person's or entity's authority be recorded before a foreclosure could be upheld.   As stated previously, the whole point of requiring assignments of mortgage, notices of pendency

---

was recorded in November 2007 but from another document, which was executed and recorded in February 2004. On January 8, 2004, Pamela Schmidt, a vice-president of CitiMortgage, executed a document entitled Limited Power of Attorney. In the Limited Power of Attorney, CitiMortgage appointed the Wilford & Geske law firm to be "its true and lawful Attorney" for purposes of executing foreclosure documents on behalf of CitiMortgage. The Limited Power of Attorney was recorded in Dakota County on February 17, 2004.

781 N.W.2d at 38.    Relying on Minn. Stat. § 580.05, Molde contended that "CitiMortgage did not comply with the statutory requirements of a foreclosure by advertisement because the 2004 Limited Power of Attorney was not recorded against his property but, rather, as a miscellaneous document in the Dakota County Recorder's Office. He asserts that, because the document was not recorded in the tract index, a reasonable search would not have led to its discovery and, thus, there was no way to know that Wilford & Geske was authorized to commence foreclosure proceedings on behalf of CitiMortgage."   Id. at 39 (internal quotation marks omitted).   After a lengthy analysis of the history behind Minn. Stat. § 580.05, the appellate court concluded that the "legislature did not intend to require that a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement be recorded in the tract index." Id. at 39-43.

[12]    According to the Minnesota Supreme Court, Minn. Stat. § 507.413, called "the MERS statute," is a recording statute that creates no obligations and does not change the requirements of the foreclosure by advertisement statute; "rather, it uses recording to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title."   Jackson, 770 N.W.2d at 494 (citation omitted).

and powers of attorney to be recorded prior to commencing the foreclosure process (in the case of an assignment) or before the foreclosure sale takes place (in the case of notices of pendency and powers of attorney)[13] is to "ensure that a mortgagor has notice and an opportunity to redeem."   Beecroft, 798 N.W.2d at 83 (citing Jackson, 770 N.W.2d at 495).   Knowing the origin of a signing person's or entity's power to execute an assignment of mortgage or foreclosure related documents will not achieve that purpose.

In sum, it is clear that the "strict compliance" standard applied by the Minnesota courts to the statutes governing foreclosures by advertisement extends only to the recording of mortgages, assignments of mortgages, and the power to conduct foreclosure-related proceedings at certain points of time and no more.   Accordingly, plaintiffs' claim that the foreclosure of their Property was invalid because there was no the recording of the origin of the Bruns's or Rice's authority to sign the Assignment of Mortgage or the Notice of Pendency and Power of Attorney is rejected.

Finally, plaintiffs' contention that the FBI's suspension of Taylor Bean's operation somehow invalidated the foreclosure because MERS "no longer had legal authority to act on behalf of Taylor Bean" and assign the Mortgage to BACHLS, (Complaint, ¶¶ 10, 11; Pl. Opp. Mem., p. 13), finds no support in the law.   Plaintiffs' Mortgage provided that MERS was the mortgagee.   Complaint, Ex. 1 (Mortgage).   As mortgagee, MERS had the power to assign the mortgage.   Id.   The fact that the holder of their note, Taylor Bean, had ceased operations at the time that MERS assigned the Mortgage to BACHLS

---

[13]   Under Minnesota law, the notice of pendency must be filed before the first publication of the foreclosure notice and the power of attorney must be "recorded prior to the sale. . . ."  Minn. Stat. § 580.032, subd. 3; Minn. Stat. § 580.05.

is irrelevant, unless of course, this Court were to accept (which it will not) the discredited "show me the note" theory plaintiffs' counsel has posited many times over.  See, e.g., Butler v. Bank of America, N.A., 690 F.3d 959, 962 (8th Cir. 2012) (the "show me the note" argument "is foreclosed by the plain language of Minnesota's foreclosure statute); Ebbighausen v. JP Morgan Chase Bank, N.A., Civ. No. 10-3120(JRT/LIB), 2013 WL 53836, at *7 (D. Minn. Jan. 3, 2013) ("the law of this Circuit clearly establishes that different entities can hold the promissory note and legal title to the mortgage, and that the holder of legal title to the mortgage need not possess the promissory note before it can institute foreclosure by advertisement.") (citing Stein v. Chase Home Fin. LLC, 662 F.3d 976, 979-980 (8th Cir. 2011) citing Jackson, 770 N.W.2d at 489-501)).

For all of these reasons, the Court concludes that plaintiffs' theories regarding their quiet title claim have no basis in law or fact and Count I must be dismissed.

### B.   Slander of Title

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).  To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms,

Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920). Additionally, plaintiff must establish that he relied on the alleged false statement. See Welk, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiffs have alleged no facts from which this Court could infer that the named defendants made a false statement, acted maliciously or that plaintiffs suffered any pecuniary loss from a publication concerning title to their property. See Ko, 2013 WL 4052680, at *4 (dismissing similarly-pled slander of title claim). Significantly, plaintiffs' only response to defendants' argument in favor of dismissal of this count was to repeat the allegations in the Complaint regarding the allegedly "inoperative" or "false" assignment of mortgage. Pl. Opp. Mem., pp. 18-19. As this Court previously stated, there is no colorable evidence that the assignment from MERS to BACHLS was improper. Therefore, plaintiff failed to state a claim for slander of title, and dismissal is required.[14]

---

[14] The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013). Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard. Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

C.    **Declaratory Judgment**

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[they are] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).  Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiffs' suit be dismissed with prejudice.[15]

---

[15]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  Such is the case here.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is

IV.    **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 7] be **GRANTED.**

2.      This matter be dismissed with prejudice.


Dated:  January 24, 2014

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 7, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).